## AMERICAN VITRIFIED PRODUCTS CO v CROOKS

Ohio Appeals, 2nd Dist, Franklin Co

No 2514.  Decided March 11, 1935

Butler & Sumner, Columbus, and N. O. Mather, Akron, for plaintiff in error.

Wilson & Rector, Columbus, for defendant in error.

630

## OPINION

By BARNES, J.

A number of very interesting questions are presented. First, it is urged that the plaintiff should not recover for the reason that he violated the Canons of Ethics in soliciting business. Counsel for plaintiff urge against this imputation and say that Mr. Crooks organized and operated a Tax Bureau and all his communications were under this designation and not as an attorney; that this Bureau was organized before he was admitted to the bar, and further that his being admitted to practice law would not prevent him from continuing his business. We think that it is now definitely determined in this state that the Tax Bureau conducted by plaintiff would be an unauthorized and unlawful practice of law. The courts of this state have so held in a number of cases, most of them originating in Cuyahoga County. The Supreme Court of Ohio affirms the principle in **The Land Title Abstract and Trust Company v Dworken et, 129 Oh St, 23**, found in the Ohio State Bar Assn. Report of December 31, 1934. While this case calls attention to the statute precluding the formation of a corporation for the purpose of carrying on the practice of any profession, it is equally true, as announced in the 3rd syllabus:

"The practice of law involves a personal relation, which cannot be fulfilled by a corporation, and the practice of law is confined to those who have met the prescribed requirements and have been regularly admitted to the Bar."

Only individuals may be admitted to the Bar. Under the facts in the instant case it was shown that the Corporation Service Company of Ohio was a mere name and the personnel thereof was F. S. Crooks, and no one else. L. F. Dillman, signing the communications as secretary, was also a mere fiction. She was a stenographer in Mr. Crooks' office. This is admitted by Mr. Crooks and in bringing his action he files the suit as F. S. Crooks, doing business as The Service Corporation of Ohio. It necessarily follows that all the acts and operations of the Corporation Service Company of Ohio were the acts of the plaintiff F. S. Crooks. When it appears that the business involved was practicing law, the subterfuge of giving the business a title will not meet the imputation that Mr. Crooks violated the Canons of Ethics in soliciting this business.

The claimed written contract sued upon was Mr. Crooks' letter of November 8, 1924, and the answer thereto by the defendant company under date of November 28, 1924.

The effect of a violation of the Canons of Ethics by soliciting business as it pertains to contracts for fees is in a maze of uncertainty and indecision. Really the law is in the making at the present time due to the fact that only in comparatively recent years has there been the growing tendency to commercialize the profession. In the case of Ingersoll v Coal Creek Company, 117, Tenn., 263, (98 SW, 178), it is held that contracts for lawyers' services obtained through solicitation were contrary to public policy and void. However, we are inclined to think that the majority rule holds to the contrary view.

We know of no reported case in Ohio directly affecting the question.

The answer of the defendant raises the issue that W. G. Murray, Treasurer of the defendant company, was not authorized to make any contract for the company relative to fees.

The trial court holds against this contention and we think there is evidence supporting his conclusion.

The defendant makes the further claim that there was no subject matter about which to contract. This is based on the premise that the Supreme Court of the United States, having declared §8728-11, **GC**, unconstitutional upon grounds that would have like effect on kindred §5503, GC, there remained no authority to levy this tax. This again, on the theory that the Legislature alone can levy taxes, and the law being unconstitutional no act of an administrative officer could be effective. We can not accept this abstractly, although concretely it has features that commend it.

A tax improperly assessed and sought to be collected as a general rule requires resistance and if, perchance, the ground of the illegality is controverted, there is surely a subject even though it may be even-

tually determined that the tax is not collectible.

This thought might be given application as to the litigation by the Airway Corporation, and which was not won until it reached the United States Supreme Court. The fact is that §8728-11 GC, was unconstitutional ab initio, but it was a subject matter of litigation until voided by judicial decree.

Likewise, we might have a subject matter of contract if the departments of state were proceeding to collect fees from foreign corporations under §5503, GC, and were prevented from so doing either through court action or the persuasive powers of the plaintiff and others.

To give the principle concrete application, we must know whether or not it is shown that the activities of the plaintiff were a moving factor in the ultimate referring of the question to the Attorney General and the advice of that official that all checks should be returned and no attempt made to collect the tax because of the decision of the United States Supreme Court. In considering and determining this question we must keep in mind that Treasurer Day was defendant in the Airway litigation and that the Attorney General was his counsel. The opinion of the United States Supreme Court was released on October 20, 1924. Within a week or less the full text of the opinion would be available through law publications.

Under the provisions of the Code, the reports of foreign corporations were required to be made in July of each year. The calculations and tabulations from the Tax Commission were made up about October 15th, and so, under the regular routine the calculation against the defendant company, as well as all other foreign corporations, was made up and in triplicate form and in the hands of the Treasurer of State before the decision of the United States Supreme Court. Under the language of the Code and but for the unconstitutionality of the section, the fee was due and payable December 1st. Defendant's first communication addressed to plaintiff was dated Akron, Ohio, November 28th, and in due course of mail would probably reach Columbus on the 29th. This was only two days prior to the due date. Mr. Day, Treasurer of State, pending the determination of their policy, held all checks and remittances in payment of foreign corporation fees, and they were not deposited for collection in any banks. After the opinion from the Attorney General, the checks and remittances were returned. The communication

from the Attorney General's office under date of December 15th indicates that he had under consideration making application for rehearing of the Airway case in the United States Supreme Court, but finally concluded that such an application would avail nothing. The letter indicates that there was no doubt in the mind of the Attorney General that the principle announced by the United States Supreme Court in the Airway case covered §5503, GC, as well as §8728-11 GC. It is true that plaintiff testifies that he contacted the office of the Treasurer of State and that of the Attorney General daily in the interest of defendant and other foreign corporations for whom he was acting.

Considering the fact that the mechanics of making annual report, calculating and tabulating charts and making up triplicate sheets, one of which was placed in the hands of the Treasurer of State, was all completed prior to the decision of the United States Supreme Court in the Airway case, we do have the concrete question as to whether or not under the peculiar facts of this case there did arise a subject matter as a basis of contract for contingent fees. We also have the added fact that the Treasurer of State at no time made any attempt to collect the fee from any foreign corporation. On the contrary, he held and refrained from cashing any checks or remittances. He promptly referred the question to the Attorney General for opinion and advice. The opinion from the Attorney General clearly indicates that there was no doubt in his mind as to the decision in the Airway case being applicable to §5503 GC, but we do find in the communication that his office was giving consideration to the question of application for rehearing. Is it fairly inferable that the activities of the plaintiff had any thing to do with the final conclusions of the Attorney General? He presents evidence of numerous conferences with Mr. Joe Eagleson, First Assistant Attorney General, now deceased. There is nothing in the record to disclose whether or not Honorable C. C. Crabbe, then Attorney General of Ohio, referred this inquiry from the Treasurer of State to Mr. Eagleson. The typewritten letter from the Attorney General to Treasurer Day is not initialed either by Attorney General Crabbe or his First Assistant, Mr. Eagleson. Plaintiff also testifies to presenting briefs or memoranda to the Attorney General, but it seems to us that after the decision of the United States Supreme Court all authorities would sink into insignificance. The only thing remaining was

a study of the syllabus and text of that case.

It is extremely doubtful if it can be said that a subject matter ever arose upon which a contract could attach.

There remains a further question as to whether or not by giving the record the most favorable interpretation to plaintiff it may be said that he saved any part of the 1924 taxes. Of course he claims that he saved all of it, and his action for a contingent fee of one-fourth is necessarily predicated upon that theory. The evidence is conclusive that no taxes were collected from foreign corporations for the year 1924. All checks and remittances were returned following the opinion and advice from the Attorney General, whether or not the forwarder of check was represented by counsel. The conclusion is irresistible that defendant's check would have been returned to them and no collection demanded regardless of plaintiff's activity. This conclusion would not be well founded if it can be determined that the ultimate action of Treasurer Day was brought about through the activities of plaintiff. The form letter sent out by Treasurer Day credits his action to the decision of the United States Supreme Court and the opinion of the Attorney General.

May it be said that the memoranda presented by plaintiff to the office of the Attorney General was responsible for the final opinion addressed to Treasurer of State Day?

It seems to us that the uncontradicted evidence presents a conclusive history of watchful waiting, and had the Attorney General advised and the Treasurer of State made a single move towards the collection of these taxes, then there would have been present a subject for action.

There is another view of this case which to our minds is determinative, and that is, under the undisputed evidence, the contingent fee under a contract of this character is unconscionable and therefore the contract is void. Contingent fees are not specially favored under the law. Under the common law agreements between attorney and client for a fee contingent upon the success of the litigation were held invalid on the ground of champerty.

In the United States under the great weight of authority contracts for contingent fees are valid. However, such contracts are always subject to the inquiry as to whether or not they are in contravention of public policy, or where the attorney has by reason of surrounding circumstances obtained an advantage, and to enforce such a contract would exact an unreasonable and unconscionable proportion of the claim. 2 R.C.L. (Attorneys at Law, §121). We must recognize that an individual when granted the privilege to practice law, impliedly obligates himself to observe the Canons of Ethics. He should always recognize that he is a member of this great profession and his conduct should always be above reproach. It is just and proper that he should be adequately paid for his services, but he should not take advantage of his clients.

It is a general principle of law that before the relationship of attorney and client exists, that they make contract at arm's length, but in the negotiations the attorney should not improperly conceal material facts in order to augment his opportunity for demanding an excessive fee. Had the defendant company in the instant case gone to an attorney's office and consulted relative to the 1924 taxes, the company would have been told that §5503, GC, was unconstitutional by reason of the decision of the United States Supreme Court. Had the counsel so consulted refrained from disclosing this information and then and there procured a contingent contract for one-fourth of the amount involved, such contract could not be enforced because of failure to make full disclosures. This rule will none the less apply in a case where an attorney solicits business in violation of the Canons of Ethics. Such an individual will not be permitted to stand in a more favorable position than does the lawyer who observes them.

It is conceded that the plaintiff knew about the decision of the Supreme Court when he sent out his form letter under date of November 8th. At that time the treasurer of the defendant company into whose hands the letter was presented, had no knowledge of the decision of the Supreme Court nor did he ascertain it until on or about December 5th. It is self-evident that had this official of the defendant company known of the decision he would not have entered into any arrangements with plaintiff. It is clearly inferable that so far as he knew this corporation fee was on the same basis as it had been in previous years. We quote from page 1040, Vol. 2, R.C.L. (Attorneys at Law), near the end of §121:

"It has been held, however, that a contingent fee is only permitted to attorneys as reward for skill and diligence exercised in the prosecution of doubtful and litigated claims, and is not allowed for the ren-

dition of mere minor services which any layman or inexperienced attorney might perform. It is the attorney's skill, diligence, ability, experience, judicial knowledge, and judgment that are thereby rewarded, and the performance of duties that require no such qualities is wholly insufficient to sustain such fee, as the true measure of such services can be ascertained on a quantum meruit."

We think the true rule is stated in the case of Cooper v Bell, 153 SW, 844:
"An unreasonable and unconscionable contract between an attorney and his client for compensation will not be enforced by the courts and in such case the attorney will be limited to the reasonable value of services."

It is our conclusion that the purported contract provides for a contingent fee that is unconscionable and therefore the contract is void.

The plaintiff will be relegated to his action on quantum meruit. Judgment of the court below is reversed and at his costs.

KUNKLE, PJ, and HORNBECK, J, concur.

## ON APPLICATION TO CERTIFY

Decided April 19, 1935

By THE COURT

Defendant in error filed application to have cause certified to the Supreme Court of Ohio on the claim that the opinion of this court is in conflict with the following cases:
The Public Service Traffic Bureau, Inc. v Haworth Marble Company, 40 Oh Ap, 255.
Boldt v Baker et, Executors, 13 Oh Ap, 125.

This procedure is prescribed under Ohio Constitution Amendment of 1912, Article 4, §6 and reads as follows:

"Whenever the Judges of the Court of Appeals find that a judgment upon which they have agreed is in conflict with the judgment pronounced upon the same question by any other Court of Appeals of the State, the Judges will certify the record in the case to the Supreme Court for review and final determination."

If this question came to us as a mere matter of discretion we would be constrained to afford defendant in error every opportunity to have a review in the Supreme Court. However, under the state of the law it becomes our duty to pass upon the question judicially whether or not there is a conflict.

At the outset it must be noted that the conflict referred to under the constitution is conflict with judgment pronounced upon the same question. This necessarily would eliminate all matters of dicta not essential to the judgment.

Even if this rule should be extended to include the opinion rather than the judgment, we are unable to find conflict.

On page 14 of our original opinion attention was called to the general principle that before the relationship of attorney and client exists that they may make contracts at arm's length. This is the substance of the first syllabus in Boldt v Baker, 13 Oh Ap. The observation in original opinion recognized this principle of law, but distinguished it under the different state of facts.

In the case of The Public Service Traffic Bureau, Inc. v Haworth Marble Company, 40 Oh Ap, 255, the first syllabus reads as follows:

"Services performed in fulfilling contract obligating corporation to practice only before administrative, nonjudicial body, do not constitute 'practice of law'."

While our opinion on page 7 referred to the recent decision of the Supreme Court in the case of Land Title & Abstract Company v Gordon, 129 Oh St, 23, wherein the court was dealing with the question of alleged illegal practice of law, yet our judgment was not predicated upon this question. On the other hand, it was our conclusion that Mr. Crooks was acting as an attorney at law. If the question is pertinent to the present inquiry, we think that the decision of the Supreme Court in 129 Oh St, supra, by analogy at least. would be given a construction contrary to that of the Public Service Traffic Bureau v Haworth Marble Company, 40 Oh Ap. supra.

Not being able to find any conflict as contemplated under the provisions of the Constitution, the application for certification must be denied.

Exceptions will be allowed. Entry may be drawn accordingly.

KUNKLE, PJ, BARNES and HORNBECK, JJ, concur.